UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERMIAL ALI REDDING,

Petitioner,

Case No. 19-13599

v.

Stephanie Dawkins Davis
United States District Judge

CONNIE HORTON,

Respondent.

_____/

## OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Jermial Ali Redding, ("Petitioner"), incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for armed robbery, Mich. Comp. Laws § 750.529, carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12.

For the reasons that follow, the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**.

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. On March 12, 2013, at about 2:45 p.m., twelve-year-old RB[1] and his friend who was also twelve, were walking on Curtis Street between Northlawn Street and Cherrylawn Street in Detroit. A small green car came down the street and parked across the street from the two boys. After the car parked, a man later identified as petitioner walked up to RB and his friend. (ECF No. 8-8, PageID.340-43). Petitioner asked the young men, "What y'all n[----]s have?" (*Id.* at PageID.343). Although RB did not see a gun, petitioner had his hand in his waistband, leading RB to believe that petitioner had a gun in his possession. RB gave petitioner his cell phone. (*Id.* at PageID.343-45). Petitioner returned to the green car, while RB and his friend ran to the home of another friend and from there to RB's home. RB informed his mother about the robbery and she called the police. (*Id.* at PageID. 346-47). The following day, RB identified petitioner as his assailant in a photo array conducted by the police. (*Id.* at PageID.349-51).

At about 3:30 p.m. on the same day, TJ, a sixteen-year-old girl, was with her friend MM at the corner of Manor St. and Keeler St. in Detroit. (ECF No. 8-9, PageID.367, 436). TJ and MM noticed a green Dodge Neon approach them along

---

[1] Because the victims were minors at the time of the offense, the Court will refer to them by their initials only to preserve their privacy. *See* Fed.R.Civ.P. 5.2(a).

Keeler Street. (*Id.* at PageID.368-69). The car had a pink sticker on the back, resembling a temporary license plate. (*Id.* at PageID.375). The car drove past the two girls, before turning around and coming back and stopping. (*Id.* at PageID.369). Petitioner exited the front passenger door of the car and said, "[D]on't say anything, this is a stick-up." While saying this, petitioner lifted up his shirt and showed TJ and MM that a handgun was tucked into his waistband. TJ said the handle was black. TJ gave petitioner her Louis Vuitton purse and cell phone, and MM relinquished her phone. Another man opened the rear passenger door of the car and said, "[D]on't say nothing, just give it to him." The man started to get out of the car but got back in when he saw the TJ and MM giving their valuables to petitioner. TJ testified that she gave petitioner her property because he was armed with a gun. TJ had seen guns before and knew what they looked like. (*Id.* at PageID.369-72). Petitioner got back into the car, which drove off. (*Id.* at PageID.374-75). TJ and MM ran to MM's home, where TJ called her mother. The police were called the next morning. (ECF No. 8-9, PageID.375).

Detroit Police Officer Micheal Davis [2] and his partner Oghenerhuemu Wanogho were on patrol on March 12, 2013 when, at about 4:00 p.m., they stopped a green Neon for having an illegible temporary plate. The temporary plate was pink. (ECF No. 8-9, PageID.438-441). Officer Davis approached the driver's

---

[2] Micheal is the correct spelling of the officer's name. (ECF No. 8-9, PageID.438).

3

side of the door and came into contact with the driver, James Ready.  Officer

Wanogho approached the passenger side where petitioner was sitting.  Two other

people were seated in the back seat.  Officer Davis asked Ready for his license,

registration, and proof of insurance, but Ready did not have them.  Officer Davis

smelled the odor of marijuana and requested Ready to step out of the car.  (*Id.* at

PageID.442-43).  Officer Wanogho noted that petitioner matched the description of

a reported armed robber they had been told about.  (*Id.* at PageID.480-81).  All

four occupants of the motor vehicle were arrested for armed robbery.  (*Id.* at

PageID.516).  A search warrant was obtained and the green Neon was searched.

Police recovered a cell phone, earrings and lip gloss, but did not find a Louis

Vuitton purse or wallet or TJ's identification.  (ECF No. 8-9, PageID.535-37).

After being convicted by the jury, Petitioner was sentenced to 15-30 years

for armed robbery; 2-10 years for carrying a concealed weapon; 2-10 years for

being felon in possession of a firearm; and 2 years for possession of a firearm in

the commission of a felony (felony-firearm) and being a fourth felony habitual

offender.  (ECF No. 8-14, PageID.853-855).  Petitioner's conviction and sentence

was affirmed by the Michigan Court of Appeals.  *People v. Redding*, No. 319255,

2015 WL 1227570 (Mich. Ct. App. Mar. 17, 2015).  But Michigan Supreme Court

remanded the case to the trial court pursuant to *People v. Lockridge*, 498 Mich.

358, 398, 870 N.W.2d 502 (2015), which had invalidated Michigan's Sentencing

Guidelines, for the judge to determine whether or not he would have imposed the same sentence even without the sentencing guidelines. *People v. Redding*, 872 N.W.2d 453 (Mich. 2015). The Court denied leave to appeal in all other respects, because it was "not persuaded that the remaining questions presented should be reviewed by this Court." *Id.*

On remand, the trial judge ruled that he would not have imposed a materially different sentence had the sentencing guidelines been advisory, rather than mandatory. (ECF No. 8-15, PageID.866). The Michigan appellate courts affirmed petitioner's sentence after remand. *People v. Redding*, No. 336896, 2018 WL 1733344 (Mich. App. Apr. 10, 2018); *lv. den.* 503 Mich. 875 (Mich. 2018).

Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Must appellant's carrying a concealed weapon, felon in possession, and felony firearm convictions be reversed where the prosecution failed to present sufficient evidence to prove those charges beyond a reasonable doubt.

> II. Whether the trial court reversibly erred, in violation of appellant's constitutional rights to due process, confrontation and fair trial, by denying a mistrial where the prosecution removed a complaining witness from their endorsed witness list without leave of the court but discussed that witness' allegedly incriminating testimony in opening statements.

> III. Was appellant denied a fair trial, the right to confront witnesses and the right to present a defense when defendant James Ready, who pled guilty to unarmed

robbery in exchange for an agreement to testify, was allowed to claim a Fifth Amendment privilege from testifying due to unspecified reasons without a determination that privilege was valid and related to the issues in the case.

IV. Is resentencing required where appellant's sentence range was increased based upon facts that were not found by a jury or proved beyond a reasonable doubt.

## II.   STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

A.    <u>Claim # 1. The insufficiency of evidence claim</u>.

Petitioner first contends that there was insufficient evidence to support his convictions for carrying a concealed weapon, felon in possession of a firearm, and felony-firearm. Petitioner specifically argues that the prosecution failed to present evidence that petitioner was in possession of an actual firearm when he robbed TJ.

This Court notes that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the crucial question in reviewing the sufficiency of the evidence to

support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's adjudication of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith*, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id*. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state

court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

On habeas review, a federal court should not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed by the factfinder at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Petitioner argues that there was insufficient evidence to sustain his convictions for felon in possession of a firearm, felony-firearm, or carrying a concealed weapon, because the prosecutor failed to prove that a real firearm was used in the commission of these crimes.

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *See Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that

the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *Id.* The elements of carrying a concealed weapon are: (1) that the defendant carried a weapon; and, (2) that the weapon was concealed on or about the defendant's person. *People v. Davenport,* 89 Mich. App. 678, 682; 282 N.W. 2d 179 (1979).

The Michigan Court of Appeals rejected the claim:

> Though defendant challenges the sufficiency of the evidence regarding three of his convictions, he only argues on appeal that one common element is lacking: his possession of a firearm during the robbery of [TJ]. However, defendant's only argument is that there was no evidence that he possessed a firearm other than [TJ]'s testimony. [TJ] clearly stated that during the robbery, defendant lifted his shirt, exposing the handle and trigger of a black handgun. [TJ] also explained that she was familiar with what a gun looks like because she had seen them before. Contrary to defendant's suggestion, [TJ]'s testimony was sufficient to allow a jury to conclude that he, indeed, possessed a firearm. Therefore, defendant's convictions were appropriate.

*People v. Redding*, 2015 WL 1227570, at *1 (internal footnote omitted).

Mich. Comp. Laws § 8.3(t) states:

> The word "firearm", except as otherwise specifically defined in statute, includes any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive.

In the present case, TJ testified that petitioner lifted his shirt and displayed the handled and trigger of a black handgun. TJ testified that she knew what a gun looks like because she had seen them before. This testimony was sufficient to establish that petitioner used an actual firearm, so as to sustain his various firearms convictions. *See People v. Davis*, 216 Mich. App. 47, 53-54, 549 N.W.2d 1, 5 (1996) (Victims' testimony was sufficient to establish all of the elements of felonious assault and felony-firearm beyond reasonable doubt; victim testified that defendant was angry and that they got into "tussle," and that she felt defendant put something against her back that she thought was gun, though she did not actually see gun, and second victim testified that he heard commotion, ran downstairs, and saw defendant pointing gun towards first victim); *People v. Perry*, 172 Mich. App. 609, 622-23, 432 N.W.2d 377, 383 (1988) (Robbery victim's testimony that she felt what she believed to be the tip of a gun behind her ear was sufficient to demonstrate that firearm was used in commission of felony). Under Michigan law, a prosecutor is not required to admit a firearm into evidence to prove that the defendant possessed a firearm during a crime. *See People v. Hayden*, 132 Mich. App. 273, 296, 348 N.W.2d 672 (1984). TJ's testimony that petitioner was armed with a firearm during the commission of the other felony offenses is sufficient by itself to support petitioner's firearm convictions. *See e.g. Hudson v. Lafler*, 421

Fed. Appx. 619, 626 (6th Cir. 2011).  Petitioner is not entitled to habeas relief on his first claim.

B.    Claim # 2.  The Confrontation Clause/missing witness claim.

Petitioner next argues that his right to confrontation and due process was violated when the prosecutor failed to produce MM to testify at trial, after suggesting or at least implying in her opening argument that MM would testify for the prosecution.  Petitioner argues that the judge should have declared a mistrial when the prosecutor deleted MM from the witness list even though she had promised that she would be calling MM to testify.

The prosecutor made the following remarks in her opening statement:

> Basically, on March 20th, 2013, at approximately 3:30 in the afternoon, daylight time, [TJ] and [MM], school age young ladies were walking down the street, and at that time they witnesses a green Neon, four door, with four individuals in it, pass by them, turn around, and kind followed [sic] them, to where it is that they made their turn.
>
> At that point in time, the individual that was in the one front passenger side of that vehicle got out of the car, that individual being this Defendant right here, and indicated to them that this is a stick-up, and that he had his gun in his waistband area.  He showed them that gun, and he basically said to them give me everything that you have.
>
> One of the young ladies had a purse with various items inside of it and she can testify to that, and that was taken from her.  The other young lady had an I-phone it was or

12

a Smart Phone, and that was taken from her, and that it was approximately 3:30.

At that point in time, that person then got back in the vehicle. There was also another individual in the back seat that basically gets out and makes some statements and closes the door. And then at that time the vehicle takes off and those young ladies, of course, run and they will give you information of what happened after that.

(ECF No. 8-8, PageID.326-27).

The Sixth Amendment guarantees a defendant the right to confront witnesses and to have compulsory process for witnesses favorable to him or to her. However, the Sixth Amendment does not require the prosecution to call every witness who is competent to testify. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992); *Whittaker v. Lafler*, 639 F.Supp.2d 818, 825 (E.D. Mich. 2009). The right to confrontation does not impose a duty on the prosecution to call a particular witness. *United States v. Bryant,* 461 F.2d 912, 916 (6th Cir. 1972); *see also Turnbough v. Wyrick,* 420 F.Supp. 588, 592 (E.D. Mo. 1976) (right to confrontation not denied by state's failure to call victim as a witness). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California,* 386 U.S. 58, 62, n. 2 (1967), the U.S. Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an

13

informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F. 2d 1, 9 (1st Cir. 1985) (internal citations omitted).

Federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F.Supp.2d 582, 601 (E.D. Mich. 2001). Michigan law's requirement that the prosecutors produce *res gestae* witnesses is simply a matter of state law whose enforcement is beyond the scope of federal habeas review. *See Collier v. Lafler,* 419 Fed. Appx. 555, 559 (6th Cir. 2011). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192 (Table), 1988 WL 87710, * 2 (6th Cir. Aug. 24, 1988) (citing *United States v. Bryant*, 461 F.2d at 916). Thus, whether a prosecutor exercised due diligence in attempting to locate a *res gestae* witness is outside the scope of federal habeas review. *Collier,* 419 Fed. Appx. at 559. Petitioner presented no evidence that MM would have offered exculpatory evidence had she testified; he is not entitled to habeas relief.

Petitioner was also not prejudiced by the prosecutor's mentioning of MM in her opening statement and the failure to call MM as a witness. Not every variance between the advanced description of the prosecutor in the opening statement of the

summary of the testimony that he or she expects to introduce, and the actual presentation constitutes a violation of the right to confrontation or reversible error, when a proper limiting instruction is given. *See Frazier v. Cupp*, 394 U.S. 731, 736 (1969). The Michigan Court of Appeals rejected petitioner's claim because the judge dismissed the armed robbery charge involving MM and then instructed the jury that they should not consider any evidence relating to the armed robbery charge against MM. *People v. Redding*, 2015 WL 1227570, at * 4 (*see* instruction at ECF No. 8-9, PageID.533-34). At the beginning and end of trial, the judge also instructed the jurors that the lawyers' statements were not evidence. (ECF No. 8-8, PageID.316; ECF 8-11, PageID.759). A jury must be presumed to have followed a trial court's instructions. *See Weeks v. Angelone,* 528 U.S. 225, 234 (2000). In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice petitioner or violate his Sixth Amendment right to confrontation, in light of the trial court's limiting instructions to the jury. *See United States v. Campbell*, 317 F. 3d 597, 606-07 (6th Cir. 2003). Petitioner is not entitled to relief on his second claim.

      C.    <u>Claim # 2. The Fifth Amendment claim</u>.

      Petitioner next claims that his right to confrontation and to present a defense was violated when the trial judge permitted his co-defendant, James Ready, whom the prosecution had planned on calling as a witness, to invoke his Fifth

Amendment privilege against self-incrimination without making an adequate determination whether there was a valid basis for Mr. Ready to do so.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *see also Crane v. Kentucky,* 476 U.S. 683, 690 (1986) ("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'") (internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane*, 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). Finally, rules that exclude evidence from criminal trials do not violate the right to present a

defense unless they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins*, 341 F.3d 507, 511-12 (6th Cir. 2003).

"[A] defendant's right to force a witness to testify must yield to that witness' assertion of his Fifth Amendment privilege against self-incrimination, where it is 'grounded on a reasonable fear of danger of prosecution.'" *United States v. Gaitan-Acevedo*, 148 F. 3d 577, 588 (6th Cir. 1998) (quoting *United States v. Damiano*, 579 F.2d 1001, 1003 (6th Cir. 1978)). The United States Supreme Court has never held that permitting a witness to assert his Fifth Amendment privilege against self-incrimination without taking the witness stand violates a criminal defendant's right to a fair trial. *See Washington v. Texas,* 388 U.S. at 23, n. 21 ("Nothing in this opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination or the lawyer-client or

husband-wife privileges, which are based on entirely different considerations from those underlying the common-law disqualifications for interest."). Therefore, the trial court did not act contrary to clearly established federal law when it allowed Mr. Ready to invoke his privilege against self-incrimination before taking the witness stand at petitioner's trial. *See Davis v. Straub*, 430 F. 3d 281, 287-88 (6th Cir. 2005). Moreover, because there is no Supreme Court caselaw that precludes a witness from making a blanket assertion of his privilege against self-incrimination, the trial court's decision to allow Mr. Ready to invoke his Fifth Amendment privilege without doing so on a question by question basis did not violate clearly established federal law so as to entitle petitioner to habeas relief. *Id.* at 288-290. Petitioner is not entitled to habeas relief on his third claim.

    D.    <u>Claim # 4. The sentencing claims</u>.

Petitioner raises several challenges to his sentence. Petitioner first argues that the trial judge mis-scored his sentencing guidelines. Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is non-cognizable on federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot

independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016).

Petitioner next contends that the trial court judge erred by considering factors beyond what was admitted to by petitioner or which were found by a jury beyond a reasonable doubt, when scoring the sentencing guidelines variables. On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013). *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.

The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial, *see People v. Lockridge*, 498 Mich. 358, 870 N.W.2d 502 (Mich. 2015). The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* 498 Mich. at 391-92. The remedy under

*Lockridge* is a remand for the trial court judge to determine if he or she would impose the same sentence even without the guidelines. *Lockridge*, 498 Mich. at 397. This remedy is based on the procedure adopted by the Second Circuit in *United States v. Crosby*, 397 F.3d 103, 117-118 (2nd Cir. 2005). *See Lockridge*, 498 Mich. at 395-396.

The Michigan Supreme Court on petitioner's initial appeal agreed that petitioner's case should be remanded to the trial judge for a determination of whether he would have imposed a different sentence without the sentencing guidelines. The trial court judge, on remand, stated on the record that he would have imposed the same sentence. Petitioner's *Lockridge* claim is moot. *See Hill v. Sheets*, 409 Fed. Appx 821, 824-25 (6th Cir. 2010) (The Michigan Supreme Court's decision to vacate petitioner's life sentence and order his re-sentencing in conformance with the United States Supreme Court's holdings in *Miller v. Alabama* and *Montgomery v. Louisiana* moots petitioner's sentencing claims).

Petitioner also appears to argue that the judge during the *Lockridge* remand should have conducted a full re-sentencing or considered a sentence reduction. In *Reign v. Gidley,* 929 F.3d 777 (6th Cir. 2019), the Sixth Circuit held that the habeas petitioner was not entitled to habeas relief based on his claim that the state trial court judge failed to conduct a re-sentencing hearing after *Lockridge* had been decided, but had instead denied petitioner's motion to correct the sentence by

stating that he would have imposed the same sentence even if the guidelines had merely been advisory at the time of sentencing. *Id.* at 780. The Sixth Circuit upheld the denial of habeas relief to the petitioner in *Reign* because the United States Supreme Court had yet to clearly establish what type of remedy would be appropriate for cases in which a mandatory sentencing guidelines regime was invalidated and made advisory. *Id.* at 781-82. The Sixth Circuit noted that different circuits had reached different conclusions about the type of remedy that should be imposed in such cases, showing that fair-minded jurists could disagree about the propriety of a *Crosby* or *Lockridge* style remand, thus, habeas relief was not appropriate. *Id.* at 782-83. Petitioner is not entitled to relief on his fourth claim.

## IV.    CONCLUSION

The Court denies the petition for a writ of habeas corpus. The Court also denies petitioner a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas

petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, petitioner is denied a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F.Supp.2d 750, 765 (E.D. Mich. 2002).

## V.    ORDER

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability. Petitioner is **GRANTED** leave to appeal *in forma pauperis*.

**IT IS SO ORDERED**.

Dated: April 30, 2021                    s/Stephanie Dawkins Davis
                                         Stephanie Dawkins Davis
                                         United States District Court Judge